Benjamin Wimmer on behalf of the defendant, Winifred Moss, I'm planning on focusing today on the first claim presented in the briefs dealing with the conduct of voir dire with the court-asked questions regarding any of the claims. I'll, of course, be happy to answer them. The fundamental premise underlying the reliability of a jury trial is that the jurors will follow the court's instructions, including the basic instruction that they should reach a decision without regard to sympathy or prejudice. This presumption is justified by the process of jury selection, and most centrally, voir dire, which has to be conducted in such a way as to provide a reasonable assurance that veneer members who will not be able to follow the judge's instructions will be detected and be excluded from the jury. In this case, the trial court destroyed the reliability of this process before it even began. Before the veneer had been asked any questions, before any member of the veneer had said anything, the trial court told the veneer that when it was asked questions, it should answer them in such a manner as to reveal that you would be a good juror rather than not a good juror. In so doing, the trial court instructed members of the veneer that were not qualified to serve as jurors not to be honest in response to voir dire questions designed to elicit that information. This was plain error that fundamentally undermined the reliability of jury selection and fundamentally undermined the fairness of Mr. Moss's trial. Now, the reason voir dire is at the center of jury selection is because, at least to this point, the best source of information about the qualifications of potential jurors is those potential jurors themselves, answering questions in open court. In light of this, the importance of effective questioning and, ideally, honest responses to those questions, discouraging veneer members from honestly answering voir dire questions is error. This has come up a number of times in the O1 courts and other courts, most frequently in the context of a trial judge responding to a veneer member who has stated that he or she can't be fair and, very frequently, that the court suspects is lying. A good example of this is United States v. Roe, the case from the U.S. Court of Appeals for the Fifth Circuit, in which a court responded to several veneer members that stated they could not be fair by accusing them in front of the jury of lying in order to avoid jury service, and informing them in front of the jury that their name would be submitted for jury service in the subsequent three months. The Fifth Circuit held in that case that this was error on the part of the trial court. The veneer members seeing this could get the message. Answers to questions indicating that they would not be able to serve on the jury, had a bias, or were otherwise not qualified, were not welcome, and they would be discouraged from fully and truthfully answering the blind ear questions. Now, in this case, what the trial court did was even more direct and worse. There was not any question pending, there was not any answer from a veneer member that set this off. It was before any questioning, and it was completely explicit. There was nothing for the veneer to pick up on, or deduce. The court specifically told the veneer, tell me what I want to hear during voir dire. Did the trial counsel object? No, the trial counsel did not object. And the error was consequently forfeited, which is why we're looking at this in the plain error context, and specifically a prompt to plain error. Errors that fundamentally undermine the fairness of trial. Now, there aren't any cases in the Illinois courts that have held that an error like this is plain error. The reason for that is we haven't had something that's this direct before. In all the earlier cases addressing dissuading jurors from truthfully answering voir dire questions, we had basically a response to a juror to an answer from a veneer member. So, for instance, in the Brown case, a particular veneer member who said you couldn't serve on the jury was going to be educated by being forced to sit through the trial. In Morales, a veneer member was threatened with a month-long jury service. In those cases, the court does have an obligation to respond when it believes that a veneer member is not answering truthfully. It just demonstrates disrespect for the court and can lead to a troublesome situation where you believe that, you know, the judge's actions are not being the kind that the rest of the veneer is looking at. If you suddenly see a number of veneer members in a row who are biased when it comes to serving on the jury, you know, it seems statistically unlikely. And you begin to think, you know, you've got to run, basically. The jurors are watching each other and attempting to get out of jury service, which creates its own problems for trying to ensure the selection of a fair jury. In a situation like this, the court taking some sort of limited action that can be appropriate and the effect of an error on the overall jury selection process, there's no reason to presume that it will be all pervasive. In this context, this is the first thing that the court does. It doesn't question the jurors or ask any questions. And the court is explicit after giving a rather fiery speech about comparing the obligations of jury service to soldiers dying in combat, you know, contrasting them favorably, explicitly says, please answer the questions in such a way as to indicate that you're a good juror. After that happens, you can't trust the responses that you're getting to any of these questions. As it was put by Justice Gordon in the dissent in Brown, the surest evidence that the court's comments have worked is that there's no particular evidence that the court's comments have worked. If the jurors are following the court's instructions, the evidence of the fact is that nobody's going to say that they're biased or can't serve on the jury. And in light of that, and this occurs, you know, there's no basis for it. It's explicit. And it occurs before a warrant here has even begun. In this situation, it's appropriate to treat this as fundamental error undermining the fairness of Mr. Moss's trial. You can't trust the jury selection that occurred after it. And as a result, you can't rely on the outcome of trial. And unless the court has any further questions about this, Mr. Moss will rest on his griefs with respect to the other two points. Thank you, Counsel. Thank you. Shanahan? In a please court, Counsel, my name is Sharon Shanahan, and I represent the people of the I'm not going to read you all four pages of it. But the trial court begins by saying, voir dire is a French term which literally means to tell the truth. It goes on to say that we're going to ask you some questions, and they may seem personal. But the purpose of these questions is to allow the court and the parties to determine or obtain information so as to make a decision as to whether or not for this particular case you would be a good juror. Now, what is a good juror? Someone who will listen to the evidence, apply the law, and then decide the issues based on the evidence and the law without any interest, sympathy, bias, or prejudice to either side. In other words, we want someone who will apply the law and decide this case fairly and honestly. It goes on to say that the right to serve on the jury is one of the few things that you as a citizen can do directly to directly influence the way our system works. He says, I'm going to ask you to remember the oath that you have taken to tell the truth. And I want you to listen to the questions, answer them truthfully. And then he says the phrase, it's not even a complete sentence, just a phrase that the defense counsel complains of, answer them in such a manner so as to reveal that you would be a good juror rather than not a good juror. It goes on to say without you jurors, without you, our system doesn't work for the state or Mr. Moss. Now, this whole argument is based on the fact that the trial court said in that phrase that they should answer the questions so as to reveal that you would be a good juror, whereas a more correct phrasing of that would have been if you would be a good juror. Counsel claims that the jury panel ignored everything else that had come before that, ignored the means to tell the truth, ignored the fact that he told them to decide the case fairly and honestly, to let them know that they decided the case fairly and honestly, to remember their oath to tell the truth. They're going to suddenly just blank out all of that and say, oh, the judge told me to lie. The judge told me that even if I am biased against this I should say that I am a good juror. One word. It's one word out of four pages. And this is not, you know, a routine jury instruction like we think about at the end of the case. This is a discussion that has no specific words assigned to it that all trial courts have with the potential jurors before they begin the case. There are no specific words to give. And in this case the judge had one word wrong. And as our Supreme Court has stated in People v. Town, this court should decline defendant's invitation to raise a single mistake word made by the judge during voir dire to the level of improperly instructing the jury. Counsel in this reply brief says that we should look at this as to how ordinary personas acting as jurors would understand those instructions. I agree. But we don't look at just that phrase in making that conclusion. We look at everything the trial court says. And it's very clear that this judge did not tell the jurors that they should say that they would be a good juror even if they were biased against the defendant. And, in fact, the trial courts made it very clear that they were to tell the truth. So there was just no, nothing wrong with what the trial court said. And there is absolutely no evidence that the jurors were biased or intimidated. Several of the jurors said that they knew that they had some problems, but they said that they could, based on their own personal circumstances, that they had certain biases. But they all stated that they could be fair. And there was one member of the panel, or excuse me, of the potential jurors that said I'm not comfortable. I can't be biased. Now, if this phrase that was used, this misspoken word, was so intimidating, then that juror wouldn't have said that. And, as a matter of fact, none of these jurors would have said that they were, they had any biases that could have reflected against Mr. Moss. And so, and you'll note that, as I read to you, that the numbers, numerous times that the trial court told the jurors to be truthful, and in People v. Ingram, that court rejected the claim that jurors are intimidated by a trial court's comments, since they were told in that case to be frank, complete, and open. Justice Shorm, you mentioned, you asked whether the defense counsel objected, and counsel for the defendant said, well, no, and that's why it's a plain error. But it's more than that. He didn't object, and we have to think about why he didn't object. He didn't object to swearing in a jury, which indicates that he believes that the jury that was impaled could be fair and impartial. And I'm not even going to begin to try and pronounce the name of the case that I sent into this court. Tresiak stands for that proposition. He had, defense counsel had ample opportunity to question every one of the potential members before selection was finished, and he never asked any of them whether they had been intimidated by the trial court or if they thought that the trial court had told them that. And if there was any problem with that, he could have done so. He was free to ask them any questions he wants. Now, defense counsel argues that if the comment caused prejudice, then there would not, they basically wouldn't answer these questions. The judge has told them why. So defense counsel, when he asks them specific questions, that they would lie to defense counsel. Well, that's not the way appellate review works. We don't say, well, if defense counsel had asked them, and this might happen, we don't know. Defense counsel had the opportunity to ask those questions, and I think it's a big stretch to argue that this judge misspoke, and therefore, if defense counsel had asked them, they would have denied being biased. We can't rely on a silent record. Now, let's look at People v. Brown, which is, and it's sole support, not even People v. Brown, the dissent in People v. Brown, written in the first district, explicitly rejected by the, the dissent has been explicitly rejected by the first district, and more importantly, even if you look at the dissent, even if you think, well, maybe the dissent in Brown has a good point there, the dissent draws a line between criticism and threats, with criticism falling on the non-reversible side, and threats of punishment falling on the reversible side. Now, as counsel for the defendant noted here in Brown, the trial court said, if that's the way you're going to be, I'm going to make you sit here for the next month and listen to all my jury cases. Whoa, okay, then I'm not going to say that, and even in the, the Howe case, I believe it was, that defense counsel wrote, excuse me, defense counsel cited, there again was a judge who accused jurors and threatened to sanction them if they tried to get out of, if he believed they were trying to get out of jury duty. That is most certainly not what happened here, and, and there's no way on earth that you can look at that language of saying, I would ask you to listen to the questions, answer them truthfully, and answer them in such a manner so as to reveal that you would be a good juror rather than not a good juror. How is that, could that possibly be considered a threat? It can't. I have no questions, I mean, no comments about the sentencing issue unless you have questions. Counsel, just let me confirm that the state's conceding the credit for $5 a day for 561 days served, there's sufficient fine that that could be applied against, so. I don't know the answer to that last half. I think, I think you have to agree with that. I believe so, yes. Okay, thank you. Thank you, Your Honor, just quickly. First of all, I believe you are correct, if I was hearing correctly just now, there is enough on the fine. There's enough fine, yeah. It's going to be like $2,500. Yeah, they impose something on top, it's not just the standard. Yeah. Anyway, to address quickly some of the opposing counsel's points, first of all, citing the Tretsiak case, basically arguing that there's a possibility here that a defense counsel, you know, liked the jury that was sat, liked the procedure used, may have been, you know, arguably, I guess, potentially deliberately sandbagging. That's always a risk when you're faced with a situation where a plain error has occurred in the trial court. There are cases, a series that have occurred recently that have involved inappropriate responses to jury questions about the definition of reasonable doubt. In several of these cases, it's been found to be plain error to give the jury a definition, even when defense counsel was going along with it. The same sort of argument could be made in that situation, but courts have been holding that as plain error. The reason for that is, when you're dealing with a fundamental error like this, involving the definition of reasonable doubt, involving, you know, basically the entire process of voir dire, it's something so central and fundamental to the functioning of a jury trial that it really doesn't matter why things get wrong, went wrong. It's something that has to be gotten right every time, even if there's not an objection, you know, regardless about how it happens. Did the defense counsel, or for that matter, either counsel, follow up with a direct inquiry of potential jurors regarding the court's statement, or was it highlighted in any way in further questioning? It was not. Of course, there could be a number of reasons for that. Counsel might have thought that drawing attention to the statement might have been, you know, even more damaging than attempting to just let it slide, given that, you know, the trial judges in charge of the courtroom may have an influence over, you know, the jurors that the individual counsel can't have. In addition, they may simply, again, you know, if the court's statement is having the effect that it would, you know, it's explicitly, basically if the jurors are following the court's instruction, further questioning isn't going to work. Additionally, finally, you know, opposing counsel brings up the fact that there aren't, you know, specific words to give. You know, there's not an IAPI instruction for what to say to the jury before voir dire begins. Again, going back to the argument in the briefs that the trial court statement may have been accidental. It may have been, but as was pointed out in Mr. Moss's reply brief, that ultimately doesn't matter what the judge privately intended. What matters is what the jury heard and what a reasonable jury would have understood. On its face, the language is explicit. You could make it say something that would not be objectionable as by substituting one word, although whether rather than would be an unusual construction. I think it would be grammatical, though. But at any rate, the point is that the judge didn't correct himself if this was an accident. And context would only make it more likely that the jury would have heard this as a, you know, instruction from the judge not to reveal any biases they had coming after, you know, the speech about dead soldiers. It's perfectly appropriate to, you know, give a, you know, brief statement to the jury about your civic duty, although this was a bit, you know, the dead soldier speech was a little amped up. There probably wouldn't have been error on its own. But when it's combined with this statement, that is serious plain error. It undermines the rest of voir dire. Unless the court has any further questions? Well, thank you. Thank you, counsel. We will take this matter under advisement. Thank you, counsel.